# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

John Laszloffy,

      Plaintiff

v.

Cindy Zoraida Garcia, et al.,

      Defendants

Case No.: 2:19-cv-01173-JAD-BNW

**Order Affirming Magistrate Judge's Discovery Rulings, Granting Summary Judgment in Favor of Defendants, and Closing Case**

[ECF Nos. 97, 109, 111, 115, 116, 117, 118, 122, 123]

      Pro se plaintiff John Laszloffy got into a car accident with defendant Cindy Garcia who then filed a claim against Laszloffy's insurance policy, causing his rates to go up. Laszloffy theorizes that Garcia and her personal-injury attorney Leon Symanski concocted the suit, so he sues them both. Garcia and Symanski move for summary judgment on Laszloffy's remaining claims for concert of action, defamation, libel, and intentional infliction of emotional distress, arguing that they either aren't viable or lack factual support. Laszloffy opposes, primarily arguing that various alleged discovery deficiencies have hampered his ability to adequately develop his claims. In keeping with that position, he has filed multiple objections to a recent magistrate-judge order that denied his motions to deem admitted two sets of requests for admissions (RFAs) that he sent Garcia and Symanski. And he likewise objects to this court's prior ruling affirming the magistrate judge's determination that he can't compel production of Garcia's medical records. Finally, Laszloffy moves for a six-month continuance of his obligation to file a joint pretrial order.

Laszloffy hasn't demonstrated that the magistrate judge erred in finding that neither his first nor second set of RFAs should be deemed admitted, so I overrule his multiple objections to that determination and affirm it instead.[1]  He also hasn't shown that reconsideration of my prior order affirming the magistrate judge's ruling on Garcia's medical records is warranted, so I overrule his "objections" to that order, too.[2]  Laszloffy's motion for a six-month continuance[3] to file a pretrial order was mooted by my prior order confirming that the joint pretrial order isn't due until after dispositive motions are resolved,[4] and regardless is based on discovery complaints that have already been rejected, so I deny that as well.  Finally, because Garcia and Symanksi have shown that Laszloffy's claims either lack factual support or a viable legal theory of liability, I grant summary judgment for Garcia and Symanski and close this case.[5]

---

[1] *See* ECF No. 111 (a "motion to vacate" the magistrate judge's RFA order at ECF No. 106, an order that the magistrate judge already vacated due to clerical errors and replaced with the order at ECF No. 110); ECF No. 115 (an objection to the already vacated order at ECF No. 106); ECF No. 116 (objections to the magistrate judge's operative RFA order at ECF No. 110); ECF No. 118 (amended objections to the magistrate judge's operative RFA order at ECF No. 110).

[2] ECF No. 109 (styled as objections to "Court Order ECF No. 94," but ECF No. 94 contains Laszloffy's own objections to the magistrate judge's order at ECF No. 88, and it is apparent that Laszloffy is actually asking that this court reconsider its order at ECF No. 105, a copy of which he attached to these objections).

[3] ECF No. 117.

[4] *See* ECF No. 114.

[5] I also deny the most recently filed motions at ECF Nos. 122 and 123.  While these were docketed as new motions, they are actually replies to Garcia and Symanski's responses to motions and objections that Laszloffy filed.  *See* ECF No. 122 at 1 (objecting to and requesting that the court deny Garcia and Symanski's response to Laszloffy's motion for a six-month continuance); ECF No. 123 at 1 (objecting to and requesting that the court deny Garcia and Symanski's response to Laszloffy's objections to the magistrate judge's RFA order at ECF No. 110).  They cover no new ground, but I have considered them.

## Background

### I.  Laszloffy and Garcia get into an accident, and Garcia files a claim with Laszloffy's insurer.

In May 2018, Laszloffy and Garcia got into a car accident in Las Vegas.[6]  Garcia filed a claim with Laszloffy's insurer Mercury Insurance shortly thereafter.[7]  Mercury determined that Laszloffy "was principally at fault" for the accident because he made "an unsafe lane change."[8]  Garcia then hired Symanski to represent her in the insurance claim, and Symanski sent a demand letter to Mercury in December 2018.[9]  In it, he described the circumstances surrounding the accident and provided a summary and itemized breakdown of Garcia's medical treatment.[10]  He also attached medical records and invoices for Mercury's review.[11]  Several months later, Mercury offered Garcia "$9,000 for full and final settlement" of her insurance claim.[12]  Garcia promptly accepted the offer and signed a release form.[13]

### II.  Laszloffy sends letters to Garcia and Symanski, and Symanski responds.

Laszloffy was displeased by the news that Garcia had filed an injury claim related to the accident.  He was first informed that she had initiated a claim in June 2018,[14] and he sent multiple letters to Mercury's claims department expressing the opinion that Garcia's claim was,

---

[6] *See* ECF No. 40; ECF No. 102 at 14.

[7] ECF No. 102 at 14.

[8] *Id.*

[9] ECF No. 97-3.

[10] *Id.* at 3–4.

[11] *See* ECF No. 97-2 at ¶ 3; ECF No. 102 at 20, 24.

[12] ECF No. 97-4 at 2.

[13] ECF No. 97-5 at 2.

[14] ECF No. 102 at 14.

among other things, "fraudulent and spurious."[15]  He also sent a letter directly to Garcia in January 2019 in which he conceded that he "was at fault for lane changing" but told her that he had "every reason to believe [she] committed insurance fraud and/or deceit" causing his insurance premiums to double.[16]  Laszloffy demanded that Garcia notify Mercury and the California DMV that she was withdrawing her claim and pay the difference between his former and current insurance premiums until the situation was resolved.[17]  He warned her that if she didn't, he would sue her, which would involve her "whole life" being "exposed" through "nasty discovery" and her having to pay legal fees; file a criminal complaint against her; notify the Nevada Worker's Compensation Board of her purported fraud; and potentially "file a lien" on her home.[18]  He then posed the question: "Is this what you want?"[19]

Garcia received this letter and forwarded it to Symanski who responded by sending Laszloffy a cease-and-desist notice.[20]  Symanski requested that Laszloffy "cease and desist any and all further communications with [Garcia], written or otherwise"; "not contact her directly in any matter"; and [f]orward any inquiries, information, or other communications to [Symanski's] attention."[21]  Laszloffy then fired back a letter to Symanski in which he stated that he stood by everything in his letter to Garcia, warned that he would bring various claims against her if his demands weren't met, and observed that mistakes are "forgivable" but "[n]ot to repent is not."[22]

---

[15] *Id.* at 18–19; *see also id.* at 21, 23–24.

[16] ECF No. 97-6 at 2.

[17] *Id.* at 3–4.

[18] *Id.*

[19] *Id.* at 4.

[20] ECF No. 97-7 at 2.

[21] *Id.* (cleaned up).

[22] ECF No. 97-8 at 2.

After this second letter from Laszloffy, Symanski reached out to Mercury.  He sent it a letter and forwarded copies of Laszloffy's, which he characterized as "very disturbing correspondence."[23]  Symanski also described the attached letters as "threatening," stated that Laszloffy was "attempt[ing] to extort money" from Garcia, and noted that in Laszloffy's latest letter he "continue[d] to threaten to take action against [Garcia] as a result of" her insurance claim.[24]  Symanski requested that Mercury contact Laszloffy and "inform him of the potential legal ramifications he faces should he continue to make threatening accusations and continue his extortion attempts."[25]  Mercury did subsequently contact Laszloffy about these letters and wrote him a letter to memorialize that conversation.[26]  This correspondence acknowledged Symanski's letter and warned Laszloffy that if he were to be sued for making "threatening accusations," his car-insurance policy "would not provide a defense for such a matter as it would fall outside the scope of [his] policy coverage."[27]

### III.   Laszloffy sues Garcia and Symanski.

Laszloffy filed this lawsuit in July 2019 and applied to proceed in forma pauperis (IFP).[28]  His complaint went through several rounds of screening and amendment.[29]  There were more defendants initially, including Garcia's employer and Mercury,[30] but Garcia and Symanski are the only ones that remain.  And the causes of action that survived screening and an earlier motion

---

[23] ECF No. 97-9 at 2.

[24] *Id.*

[25] *Id.*

[26] ECF No. 102 at 22.

[27]*Id.*

[28] ECF No. 1.

[29] *See, e.g.*, ECF Nos. 15, 23, 26, 27, 31, 32, 33, 35, and 39.

[30] ECF Nos. 34, 35, and 90.

to dismiss are a concert-of-action claim against both Garcia and Symanski; and defamation, libel, and intentional-infliction-of-emotional-distress claims brought solely against Symanski.[31]  With discovery closed, Garcia and Symanski move for summary judgment on all remaining claims. Laszloffy opposes that motion and challenges a wide swath of discovery rulings.

## Discussion

### I.  Discovery Disputes

#### A.  The magistrate judge's finding that Laszloffy's RFAs shouldn't be deemed admitted is affirmed.

Laszloffy has filed multiple objections to (and a motion to vacate) the magistrate judge's denial of his request that his first and second set of RFAs be deemed admitted.[32]  Two of the four RFA-related motions that he filed are technically moot since they relate to an order that the magistrate judge vacated when she issued a corrected order.[33]  But Laszloffy raises the same issues across all four filings, and none of them warrants reversal.[34]

A district judge may reconsider any non-dispositive matter that has been finally determined by a magistrate judge "when it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."[35]  This standard of review "is significantly deferential" to a

---

[31] ECF Nos. 35 and 90.

[32] ECF Nos. 111, 115, 116, and 118.

[33] ECF No. 111 (motion to vacate order ECF No. 106); ECF No. 115 (objection to order at ECF No. 106).  Laszloffy also filed another objection to this order, ECF No. 108, but that was already deemed moot by the court's minute order at ECF No. 112.

[34] Laszloffy also re-raises the doctor-patient privilege arguments that the court considered and rejected.  *See* ECF No. 105.

[35] L.R. IB 3-1(a).

magistrate judge's determination.[36]  A district court may overturn a magistrate judge's determination under this standard only if it has "a definite and firm conviction that a mistake [of fact] has been committed"[37] or a relevant statute, law, or rule has been omitted or misapplied.[38]

The RFA issues in this case largely stem from Laszloffy's failure to use defense counsel Lawrence Mittin's correct email address when sending him correspondence.[39]  He sent the first set of RFAs to "1mittin@cpklaw.com" (which starts with the number "1"), not the email address defense counsel registered with the court, "lmittin@cpklaw.com" (which starts with the lower-case letter "L").[40]  But Laszloffy also mailed a copy to Mittin who was able to timely respond[41] to this particular set.[42]  The only real argument that Laszloffy raises in the face of evidence demonstrating that Garcia and Symanski timely responded to the first set of RFAs is that Mittin could have falsified the date on the responses.[43]  How Mittin could have post-dated the email

---

[36] *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993).

[37] *Id.* (internal quotation marks omitted).

[38] *See Grimes v. City and Cnty. of S.F.*, 951 F.2d 236, 240–41 (9th Cir. 1991).

[39] *See* ECF No. 110 at 2–4.

[40] ECF No. 95 at 6.; *see also* ECF No. 118 at 5 (recent filing improperly listing defense counsel's email address as "imittin@cpklaw.com" on the certificate of service); ECF No. 123 at 4 (same); ECF No. 96 at 23 (email correspondence that Laszloffy attempted to send Mittin in March 2023 using the "imittin@cpklaw.com" email address).

[41] *See* Fed. R. Civ. P. 35(a)(3).

[42] ECF No. 98-3 at 2 (a paralegal from Mittin's firm emailed Laszloffy the responses to his first set of RFAs on October 10, 2023).

[43] ECF No. 118 at 2 (arguing that Mittin "could have easily pre-dated Request for Admissions set 1 to the earlier date"); *see also* ECF No. 110 at 3 (the magistrate judge addressed and rejected this argument).

transmitting the responses, though, is not explained, and Laszloffy's baseless speculation falls far short of giving this court a "definite and firm conviction that a mistake has been committed."[44]

Laszloffy also sent his second set of RFAs to the wrong email address[45] and, according to Mittin, didn't follow up by mail.[46]  Laszloffy doesn't deny that he served this set of RFAs by email only—he didn't mail a copy.[47]  Instead, he argues—as he did before the magistrate judge—that it doesn't matter what email username he uses so long as the firm's domain name (@cpklaw.com) is correct because "[t]hey are all received by the website."[48]  The court sees no mistake of fact in the magistrate judge's finding that Laszloffy sent the RFAs to the wrong email address despite repeated warnings from Mittin[49] that he wasn't receiving Laszloffy's emails because he kept using the wrong username.[50]  Nor does it find that she erred in concluding that the 30-day response deadline wasn't triggered by Laszloffy's mis-service of the second set of RFAs.[51]

---

[44] *Concrete Pipe*, 508 U.S. at 623.  Though Laszloffy also argued to the magistrate judge that Mittin signing the RFAs on behalf of his clients was improper, *see* ECF No. 110 at 3, he has now conceded that this argument is meritless.  *See* ECF No. 116 at 2.

[45] *See* ECF No. 98-1 at 1; ECF No. 96 at 7.

[46] ECF No. 101 at 4.

[47] ECF No. 110 at 4; ECF Nos. 111, 115, 116, and 118.

[48] ECF No. 115 at 2; *see also* ECF No. 111 at 1–2; ECF No. 116 at 2; ECF No. 118 at 1–2.

[49] *See* ECF No. 98-6 at 2–5.  Mittin told Laszloffy that he wasn't receiving his emails because he was using the wrong email address as far back as October 2023, and reminded him about this issue multiple times after that, too.  *Id.*

[50] *See* ECF No. 110 at 4.  While Laszloffy claims to have attached exhibits showing that Mittin "did indeed receive all of [Laszloffy's] emails," *see* ECF No. 116, I have reviewed these exhibits and none demonstrate this.  *See* ECF No. 115 at 6–41; ECF No. 116 at 5–15; ECF No. 118 at 7–43.  The emails he attached when he first moved to deem the RFAs admitted only demonstrate that he sent both sets of RFAs to the wrong email address.  ECF No. 95 at 6, 15; ECF No. 96 at 7, 12.

[51] *See* ECF No. 110 at 4.

Laszloffy raises several other issues but none of them warrants reversal.  He again questions whether Federal Marshals actually served several subpoenas that he claims to have submitted.[52]  But as the court explained in its last order, appeals of unrelated magistrate-judge determinations aren't proper vehicles for raising those service-related concerns,[53] and the time to address them has passed.[54]  Laszloffy also contends that the magistrate judge deciding his motions without oral argument denied him "his due process of law and right to be heard personally in court."[55]  But this district's local rules state that "[a]ll motions may be considered and decided with or without a hearing,"[56] so this, too, doesn't support Laszloffy's argument.  In short, Laszloffy's hasn't demonstrated that there are grounds to reverse the magistrate judge's decision that neither his first nor second set of RFAs should be deemed admitted.

---

[52] *See, e.g.*, ECF No. 116 at 2; ECF No. 118 at 3.

[53] ECF No. 105 at 4.

[54] Laszloffy appears to have first raised this subpoena-service issue in his objections to the magistrate judge's decision to deny his motion to compel production of Garcia's medical records, *see* ECF No. 94, which were lodged after the close of discovery.  *See* ECF No. 53 at 2 (discovery cutoff of March 4, 2024).  And all four of the subpoenas—which apparently date back to October 2023—were targeted at obtaining Garcia's medical records (either from Mercury or her physicians), *see* ECF No. 118 at 15–26, evidence that the magistrate judge determined Laszloffy wasn't entitled to and that, as discussed below, wouldn't help prove any of his remaining claims.  *See* ECF No. 88; *see also* ECF No. 105 (affirming the magistrate judge's order on this issue).

[55] ECF No. 118 at 3.

[56] L.R. 78-1.

**B.    Laszloffy hasn't demonstrated that reconsideration of the order affirming the magistrate judge's denial of his motion to compel is warranted.**

Laszloffy also filed "objections"[57] to my affirmation of the magistrate judge's order denying his motion to compel production of Garcia's medical records.[58]   Because objections are reserved for disagreement with a magistrate judge's recommendation[59] and is not a proper process for challenging orders written by a district-court judge, I liberally construe his motion instead as one for reconsideration of my order.[60]   A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," so long as it still has jurisdiction.[61]   A party seeking reconsideration must set forth "some valid reason why the court should reconsider its prior decision" by presenting "facts or law of a strongly convincing nature."[62]   Reconsideration is appropriate if the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."[63]   "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the

---

[57] ECF No. 109 (Laszloffy's "objections" to this court's order affirming the magistrate judge's denial of his motion to compel).

[58] ECF No. 105 at 5 (order affirming the magistrate judge's denial of Laszloffy's motion to compel).

[59] *See* L.R. IB 3-1(a).

[60] L.R. 59-1.

[61] *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013); L.R. 59-1.

[62] *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).

[63] *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

1  court already has ruled,"[64] and it may not be based on arguments or evidence that could have

2  been raised previously.[65]

3        Laszloffy restates evidentiary and privilege arguments throughout this motion that he

4  raised in his objections to the magistrate judge's order on this same issue.[66]  But these arguments

5  were addressed in my order affirming the magistrate judge's denial of his motion to compel, and

6  Laszloffy offers no convincing reason to consider them again.[67]  He also contends that a case

7  that I cited for a general standard of review "does not state . . . what this Judge Dorsey claims."[68]

8  This contention is incorrect,[69] however, and Laszloffy's assertion that another case referenced

9  for general legal principles is "not on point" and "has absolutely nothing to do with" his case

10  similarly misunderstands the purpose for which it was cited.[70]  Finally, Laszloffy raises the RFA

11

---

12  [64] *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005) (citing *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000)); *see also Poorsina v. New Penn Fin., LLC*, 2022 WL 17038952, at *1 (9th Cir. Nov. 17, 2022) (district court didn't abuse its discretion in denying request for leave to file motion for reconsideration when party "was attempting to relitigate issues already resolved by the district court").

14  [65] *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

15  [66] ECF No. 109 at 1–3.

16  [67] L.R. 59-1 ("A movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts."); *see also Brown*, 378 F. Supp. 2d at 1288 (citing *Brogdon*, 103 F. Supp. 2d at 1338).

18  [68] ECF No. 109 at 1–2 (discussing the court's citation to *Concrete Pipe*).

19  [69] *See* ECF No. 105 at 2 (citing to *Concrete Pipe* for the propositions that the "clearly erroneous or contrary to law" standard of review is "significantly deferential" and a court applying this standard should overturn a determination if it has "a definite and firm conviction that a mistake [of fact] has been committed"); *Concrete Pipe*, 508 U.S. at 623 ("[R]eview under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'"); *see also* 28 U.S.C. § 636(b)(1)(A).

22  [70] Laszloffy argues that the court erred in relying on *Grimes*, 951 F.2d at 240–41.  But the court only cited *Grimes* for the proposition that a magistrate judge's determination can be overturned if she omitted or misapplied a relevant statute, law, or rule, *see* ECF No. 105 at 2, not for any factual similarities that case shares with this one.  And Laszloffy doesn't appear to take issue with that general legal principle.  *See* ECF No. 109 at 2; *see also Grimes*, 951 F.2d at 240–41 (upholding affirmance of magistrate judge's discovery sanctions order and noting that "[t]he

issue here, too.[71]  But the order that he is seeking review of via these "objections" didn't address his RFAs, so this motion isn't the proper vehicle for considering those arguments.[72]  Regardless, I already addressed his RFA-related complaints in the preceding section.  So Laszloffy hasn't demonstrated that reconsideration of my prior order is warranted either.

## II.     Motion for Summary Judgment

### A.     Legal Standard

Having concluded that no relief from discovery-related orders is warranted, so the record is as developed as it's going to get, I turn to the defendants' motion for summary judgment. Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[73]  When the moving parties do not bear the burden of proof on the dispositive issue at trial, they are not required to produce evidence to negate the opponent's claim—their burden is merely to point out the evidence showing the absence of a genuine material factual issue.[74]  The movants need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[75]  The court must view all facts and draw all inferences in the light most favorable to the nonmoving parties.[76]

---

district court shall defer to the magistrate's orders unless they are clearly erroneous or contrary to law," (citing Fed. R. Civ. P. 72(a))).

[71] ECF No. 109 at 2.

[72] ECF No. 110.

[73] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[74] *Id.* at 323.

[75] *Id.* at 322.

[76] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

**B.      Laszloffy's concert-of-action claim fails as a matter of fact and law.**

Garcia and Symanski argue that summary judgment on Laszloffy's concert-of-action claim is warranted because he hasn't demonstrated that Garcia's insurance claim was fraudulent—the type of tortious conduct that forms the basis of this claim as pled.[77]  They contend that while Laszloffy "continues to cry fraud," he has "no proof."[78]  Laszloffy doesn't deny that he hasn't uncovered evidence to support his concert-of-action theory.  Rather, he counters that he hasn't finished discovery and that his ability to prove this claim has been impeded by Garcia and Symanski's refusal to cooperate and turn over Garcia's medical records.[79]  According to Laszloffy, "further discovery contemplate [sic] by plaintiff will in due course identify in detail the actual part played by Garcia and Symanski."[80]

**1.      Discovery is over.**

Laszloffy's main argument that further discovery will turn up the evidentiary support he needs ignores the procedural reality of this case that discovery is complete and has been for some time.  The discovery plan (which Laszloffy agreed to) established a discovery cutoff date of March 4, 2024, and there is nothing to indicate that this deadline was extended.[81]  Laszloffy did have a number of pending discovery-related motions and objections, but the court ruled on those

---

[77] ECF No. 97 at 7.

[78] ECF No. 107 at 4.

[79] ECF No. 102 at 1–3.

[80] *Id.* at 4.

[81] ECF No. 53 at 2.  It does appear that Garcia and Symanski responded to Laszloffy's second set of RFAs despite not being properly served until after the discovery cutoff.  *See* ECF No. 110 at 4; ECF No. 101-5 at 2–9.  But there isn't any indication that they did so under some general extension of discovery deadlines.

above and none were resolved in his favor.  In short, there is nothing outstanding at this point, so Laszloffy has gotten all the evidence from the defendants that he's going to get.

## 2.  *Further discovery wouldn't help Laszloffy's concert-of-action claim.*

Laszloffy's concert-of-action theory is also fundamentally flawed because the conduct that he alleges occurred legally doesn't support such a claim regardless of whether any yet-to-be-discovered evidence might substantiate his allegations.  To establish a concert-of-action claim in Nevada, a plaintiff must show that the defendants (1) engaged in tortious conduct and (2) "agreed to engage in conduct that is inherently dangerous or poses a substantial risk of harm to others."[82]  As the Nevada Supreme Court explained in *GES, Inc. v. Corbitt*,[83] mere negligence or an agreement to act together is not enough; the agreed-upon conduct has to be dangerous, not merely detrimental:

> [T]he defendants must have agreed to engage in conduct that is inherently dangerous or poses a substantial risk of harm to others. Thus, this requirement is met when the defendants agree to engage in an inherently dangerous activity, with a known risk of harm, that could lead to the commission of a tort.  Mere joint negligence, or an agreement to act jointly, does not suffice.[84]

"The tort of concert of action has traditionally been quite narrow in the scope of its application."[85]  Historically, it has been "largely confined to isolated acts of adolescents in rural

---

[82] *GES v. Corbitt*, 21 P.3d 11, 14–15 (Nev. 2001); *see also Abrams v. Sanson*, 458 P.3d 1062, 1070 (Nev. 2020).

[83] ECF No. 43 at 4.

[84] *GES*, 21 P.3d at 15.

[85] *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 111 (Nev. 1998), *abrogated in part by GES*, 21 P.3d at 11; *see also GES*, 21 P.3d at 15 ("To the extent that our holding in *Mahlum* suggests that concert of action requires no more than an agreement along with tortious conduct, it is disfavored.").

society" and was "meant to 'deter antisocial or dangerous behavior.'"[86]  "The classic application of concert of action is drag racing, where one driver is the cause-in-fact of plaintiff's injury, and the fellow racer is also held liable for the injury."[87]

The harm that Laszloffy alleges that he suffered isn't the same caliber as those caused by drag racing or antisocial or other dangerous behavior.  He alleges that Garcia and Symanski "filed a false personal injury claim against him,"[88] causing his insurance premium to "more than double[]" from \$742.88 to \$1,537.89[89] and causing him economic and emotional distress.  But no Nevada case has held that the risk-of-harm element can be satisfied by purely economic loss or circumstances remotely analogous to these.  So even if he was entitled to Garcia's medical records, and even if those records showed that she didn't actually have the injuries that she received treatment for, Laszloffy's concert-of-action claim would still fail.  In sum, none of the evidence that Laszloffy still seeks could save this claim from summary judgment.

### 3. *Laszloffy's other arguments fail to establish a genuine issue of material fact.*

Most of Laszloffy's remaining arguments are based on his defective concert-of-action theory and thus don't provide grounds for allowing this claim to proceed past summary judgment.  He highlights, for example, that his and Garcia's cars were minimally damaged in the accident, her passenger "never filed an injury report," and "[n]o police or paramedics were

---

[86] *Mahlum*, 970 P.2d at 111 (quoting *Santiago v. Sherwin–Williams Co.*, 794 F. Supp. 29, 31 (D. Mass. 1992), *aff'd* 3 F.3d 546 (1st Cir. 1993)); *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).

[87] *Mahlum*, 970 P.2d at 111.

[88] ECF No. 40 at ¶ 9.

[89] *Id*. at ¶ 55.

15

called."[90]  But such details don't establish that a genuine issue of material fact exists as to this cause of action because they only go to the validity of Garcia's insurance claim and not that there was an agreement to engage in the type of dangerous behavior needed to support such a claim under Nevada law.  His observation that Garcia finished her passenger's ride after the accident and that this doesn't "sound like an injured person" likewise isn't enough.[91] And evidence that Laszloffy paid more for insurance after Garcia's insurance claim[92] (albeit with a different insurer) doesn't fix the shortcomings that doom his concert-of-action theory.  So I grant summary judgment for Garcia and Symanski on this claim.

### C.    Symanski's letter to Mercury wasn't defamatory or libelous.

Symanski argues that summary judgment is warranted Laszloffy's the defamation and libel claims because the statements that Laszloffy alleges are defamatory—assertions made in a letter that Symanski sent to Mercury—are all true.[93]  There are two assertions that could form the basis of Laszloffy's claims: (1) that Laszloffy sent threatening letters and (2) that those letters amounted to extortion attempts.[94]  Symanski contends that Laszloffy's letters did threaten Garcia and that Laszloffy made these threats "in order to wrest or wring money out of her."[95]  And because truth is a complete defense to defamation and libel claims, Symanski argues,[96] summary judgment on these claims should be granted in his favor.

---

[90] ECF No. 102 at 3–4.

[91] *Id.* at 4.

[92] *See id.* at 15–16.

[93] ECF No. 97 at 7–9.

[94] *Id.* at 7–8.

[95] *Id.*

[96] *Id.* at 9.

Laszloffy doesn't address this argument in his response or really discuss his defamation and libel claims at all,[97] instead focusing on his inexorable belief that Garcia's insurance claim is fraudulent.[98]  But the veracity of Garcia's insurance claim has no bearing on these causes of action because the fourth-amended complaint confirms that they both arise out of the letter that Symanski sent to Mercury, in which Symanski allegedly falsely "accus[ed] [Laszloffy] of harassment and extortion."[99]

### 1.  A statement is true for defamation purposes if its gist or sting is true.

Libel is a form a defamation, so I analyze Laszloffy's claims for defamation and libel together.[100]  In Nevada "[a]n action for defamation requires the plaintiff to prove four elements: '(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'"[101]  "A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite

---

[97] Laszloffy does mention one of the cases that Symanski cites in this part of his arguments, *Wellman v. Fox*, 825 P.2d 208, 210 (Nev. 1992), arguing that Symanski's reliance on it is "unfounded" and questioning what it has to "do with defendant's motion for summary judgment."  ECF No. 102 at 3.  But Symanski only cites *Wellman* for the proposition that a statement is libelous only if it is false, which is an accurate statement of the law.  *See Wellman*, 825 P.2d at 210; *see also Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009).

[98] *See* ECF No. 102.

[99] ECF No. 40 at ¶¶ 105–12.

[100] *See Flowers v. Carville*, 292 F. Supp. 2d 1225, 1232 n.1, 1232–33 (D. Nev. 2003), *aff'd*, 161 F. App'x 697 (9th Cir. 2006); *see also Jackson v. Las Vegas Rev. J.*, 2018 WL 4173192, at *1 (Nev. Ct. App. Aug. 10, 2018) ("[L]ibel is simply a subset of defamation that concerns statements expressed in print or writing." (citing 53 C.J.S. *Libel & Slander; Injurious Falsehood* §§ 1, 3 (2017))).

[101] *Clark Cnty. Sch. Dist.*, 213 P.3d at 503 (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)).

derogatory opinions about the subject, and hold the subject up to contempt."[102]  Truth is a complete defense to defamation and libel claims[103] and one that can prevail on summary judgment if "there is no dispute [that] the statements are true."[104]  But "it is not the literal truth of each word or detail used in a statement [that] determines whether or not it is defamatory; rather, the determinative question is whether the 'gist or sting' of the statement is true or false."[105]  That a statement is "substantially true" is therefore enough to defeat a defamation or libel claim.[106]

### 2.   The gist or sting of Symanski's statements is true.

Laszloffy alleges that Symanski's letter to Mercury inaccurately accused him of "harassment."[107]  That letter didn't mention harassment, but it did at various points characterize the letters that Laszloffy had sent to Garcia and Symanski as "threatening," noted that Laszloffy "continue[d] to threaten to take action against" Garcia because of the insurance claim, and indicated that there could be potential "legal ramifications" if Laszloffy "continue[d] to make

---

[102] *K-Mart Corp. v. Washington*, 866 P.2d 274, 281–82 (Nev. 1993) (citing *Las Vegas Sun v. Franklin*, 329 P.2d 867, 869 (Nev. 1958)).

[103] *Lasko v. Am. Bd. of Surgery*, 2015 WL 13239096, at *2 (D. Nev. Dec. 11, 2015) (collecting cases); *Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1108, 1131 (D. Nev. 2014); *Wellman*, 825 P.2d at 208.

[104] *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 924 (D. Nev. 2019); *see, e.g.*, *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1151 (9th Cir. 1988) (affirming summary judgment for defendant when "undisputed facts establish[ed] the truth of the substance of" the allegedly defamatory statements); *Shoemaker v. Northrop Grumman Corp.*, 2011 WL 6026122, at *5 (D. Nev. Dec. 2, 2011), *aff'd sub nom. Shoemaker v. Northrop Grumman Tech. Servs., Inc.*, 567 F. App'x 481 (9th Cir. 2014) (granting summary judgment for defendants on defamation claim when at-issue statements were all "either actually true, irrelevant, or not defamatory").

[105] *Rosen v. Tarkanian*, 453 P.3d 1220, 1224 (Nev. 2019) (quoting *Oracle USA*, 6 F. Supp. 3d at 1131) (cleaned up).

[106] *See Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002) (citing *Mark v. Seattle Times*, 635 P.2d 1081, 1092 (Wash. 1981)).

[107] ECF No. 40 at ¶ 111.

threatening accusations."[108]  Symanski contends that these statements aren't defamatory because Laszloffy did just that: he sent letters in which he threatened action against Garcia and made threatening accusations.[109]

### a.     Laszloffy did make various threats.

Symanski's statements that Laszloffy's letters were "threatening," threatened action against Garcia, and contained "threatening accusations" are substantially (if not entirely) true.  In his first letter, Laszloffy told Garcia that he believed that she committed "insurance fraud and/or deceit" by filing "obvious bogus claims" and if she didn't acquiesce to his demands, he would sue her.[110]  He also warned her of "how nasty discovery can become" and told her that her "whole life [would] get exposed."[111]  Laszloffy likewise stated that it was possible that he would file a lien on her property and threatened to bring criminal charges against her, too.[112]

The letter carries threatening undertones as well.  Laszloffy essentially told Garcia that he knows where she lives, noting that he was aware of the mortgage on her house, listing her property's accessor parcel number, and observing that her home was "about 7/10ths of a mile from the airport."[113]  He also listed the names of individuals that he believed to be her relatives and apparently enclosed some of their public records.[114]  And Laszloffy's letter to Symanski, which followed the one he sent to Garcia, noted that he stood by everything that he said in his

---

[108] ECF No. 97-9 at 2.

[109] ECF No. 97 at 8.

[110] ECF No. 97-6 at 3.

[111] *Id.*

[112] *Id.* at 3–4.

[113] *Id.* at 2.

[114] *Id.*

first letter; Garcia's mistakes were "forgivable," but not "repent[ing]" for those mistakes was not; and "[f]or Garcia's sake" he hoped that she would meet the various demands in his first letter.[115]  So Symanski's characterization of these letters as threatening (and more specifically as threatening action against Garcia) is true.

### b.    *Laszloffy sought to gain money through his threats.*

Symanski also describes Laszloffy's letters—which he attached to his letter to Mercury—as an effort "to extort money from [his] client" and "extortion attempts."[116]  Symanski contends that these statements aren't defamatory because Laszloffy in fact made a number of threats in an effort to extract money from Garcia.[117]  This included threatening to sue her, "expose her whole life," and accuse her of a crime.  This, according to Symanski, "squarely meets the definition of extortion."[118]  For reference, Nevada's extortion statute makes it a felony to threaten someone "directly or indirectly" with, among other things, "the intent to extort or gain any money or other property" from that person.[119]  The law explicitly prohibits threatening to "accuse any person of a crime," "expose any secret," "injure a person or property," or "expose or impute to any person any deformity or disgrace."[120]  More generally, extortion refers to "the practice of obtaining something, especially money, through force or threats."[121]

---

[115] ECF No. 97-8 at 2–3.

[116] ECF No. 97-9 at 2.

[117] ECF No. 97 at 8–9.

[118] *Id.* at 9.

[119] Nev. Rev. Stat. § 205.320.

[120] *Id.*

[121] *Extortion*, The New Oxford American Dictionary (2d ed. 2005).

Laszloffy was objectively trying to obtain money from Garcia, as he demanded that she pay him $714.88 every six months until his insurance rates were lowered.[122]  He also insisted that she sign documents rescinding her insurance claim and send those to Mercury and the California DMV.[123]  And he didn't just threaten to sue Garcia if she didn't meet his demands; he also raised the specter of criminal charges, her whole life being exposed, and a lien being placed on her home.[124]  Laszloffy's decision to highlight that he knew where Garcia lived could have led her reasonably to infer that her physical safety was potentially being indirectly threatened, too.  In short, Laszloffy sent intimidating letters that threatened Garcia with prison, financial ruin, and "nasty" litigation in which her "whole life would be exposed" if she didn't send him money and cancel her insurance claim.  So the "gist or sting" of Symanski's assertion that Laszloffy was attempting to extort Garcia was true, not false.

### 3.  *Even if Symanski's statements weren't true, they were privileged.*

In Nevada there is a "long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged."[125]  "This privilege, as its name indicates, is absolute: it 'precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff.'"[126]  Its purpose is to grant attorneys "as officers of the court the utmost freedom in their efforts to obtain

---

[122] ECF No. 97-6 at 3.

[123] *Id.*

[124] *Id.* at 3–4.

[125] *Fink v. Oshins*, 49 P.3d 640, 643 (Nev. 2002) (quoting *Circus Circus Hotels v. Witherspoon*, 657 P.2d 101, 104 (Nev. 1983)).

[126] *Id.* (quoting *Circus Circus Hotels*, 657 P.2d at 104).

justice for their clients."[127]  Whether this privilege applies is a question of law for the court to decide.[128]

The scope of this privilege "is quite broad."[129]  A "defamatory communication 'need not be strictly relevant to any issue involved' in 'the proposed or pending litigation'"[130] for the privilege to apply; "it only need be 'in some way pertinent to the subject of controversy.'"[131] And it applies to relevant communications that precede proposed judicial proceedings, not just those "made during actual judicial proceedings."[132]  In such cases, a communication "will be cloaked with immunity only if the communication is made 'in contemplation of initiation' of the proceeding,"[133] which means that "the proceeding must be contemplated in good faith and under serious consideration" at the time the purportedly defamatory communication is made.[134]  But "[w]ithin these limits, courts should apply the absolute privilege liberally, resolving any doubt 'in favor of its relevancy or pertinency.'"[135]

There is no question that Symanski's letter to Mercury and the statements contained therein are "in some way pertinent to the subject of" this action because they were a direct

---

[127] *Id.* (quoting *Bull v. McCuskey*, 615 P.2d 957, 961 (1980), *abrogated on other grounds by Ace Truck v. Kahn*, 746 P.2d 132 (1987)).

[128] *Id.* at 643–44 (quoting *Circus Circus Hotels*, 657 P.2d at 105).

[129] *Id.* at 644.

[130] *Id.* (quoting Restatement (Second) of Torts § 586 cmt. c (1977)).

[131] *Id.* (quoting *Circus Circus Hotels*, 657 P.2d at 104).

[132] *Id.* (quoting *Bull*, 615 P.2d at 961).

[133] *Id.* (quoting 2 Rodney A. Smolla, Law of Defamation § 8:16 (2d ed. 2002)).

[134] *Id.* (quoting *K–Mart Corporation v. Washington*, 866 P.2d 274, 282 n.7 (Nev. 1993)) (cleaned up).

[135] *Id.* (quoting *Club Valencia Homeowners v. Valencia Assoc.*, 712 P.2d 1024, 1027 (Colo. Ct. App. 1985)).

response to, among other things, Laszloffy's repeated threats to initiate this very case.[136]

Symanski sent the letter to a former named defendant in this action, and in it he discusses

Garcia's insurance claim and that Laszloffy had "threaten[ed] to take action against [his] client

as a result of" that claim.[137]   The letter also indicates that Symanski was also seriously

considering initiating legal proceedings against Laszloffy at the time, as evidenced by

Symanski's request that Mercury contact Laszloffy "to inform him of the potential legal

ramifications he faces should he continue" in his course of conduct and statement that "[f]ailure

to do so may result in [Symanski's] firm naming Mercury Insurance Company as a Co-

Defendant in future litigation in this matter."[138]   So the letter directly relates to this action (and

any potential action Symanski was considering bringing on Garcia's behalf if Laszloffy didn't

cease his course of conduct) and was drafted in serious contemplation of this or another related

action being initiated, either by Laszloffy or Symanski on Garcia's behalf.   Symanski's

statements are therefore privileged and non-actionable, so summary judgment would be

warranted on Laszloffy's defamation and libel claims even if the at-issue statements weren't true

or substantially true.

### D.      This record can't support Laszloffy's IIED claim.

Laszloffy's IIED claim, which is also based on the letter that Symanski sent to Mercury,

fails for reasons similar to those that doom his defamation and libel claims.   To prevail on an

IIED claim in Nevada, a plaintiff must prove, among other elements, extreme and outrageous

---

[136] ECF No. 97-9 at 2.

[137] *Id.*

[138] *Id.*

conduct.[139]  This requires showing that the defendant took actions that were not just "inconsiderate and unkind" but rather "outside all possible bounds of decency and . . . regarded as utterly intolerable in a civilized community."[140]  The type of conduct that meets this high burden is just not present in this case, in which the complained-of conduct consisted of a single, non-defamatory letter to Mercury complaining about the demands that Laszloffy was making on Garcia.  Because this record contains no evidence to show that Laszloffy was subjected to outrageous conduct wholly unacceptable to society,[141] I grant summary judgment for Symanski on the IIED claim, too, ending this case.

## Conclusion

IT IS THEREFORE ORDERED that Laszloffy's motions at **[ECF No. 122] and [ECF No. 123] are DENIED.**

IT IS FURTHER ORDERED that Laszloffy's objections to and motion to vacate the magistrate judge's order denying Laszloffy's request that his RFAs be deemed admitted **[ECF Nos. 111, 115, 116; and 118] are DENIED,** and the magistrate judge's order **[ECF No. 110] is AFFIRMED.**

IT IS FURTHER ORDERED that Laszloffy's objections to the court's order affirming the magistrate judge's denial of Laszloffy's motion to compel **[ECF No. 109] is DENIED.**

IT IS FURTHER ORDERED that Garcia and Symanski's motion for summary judgment **[ECF No. 97] is GRANTED.**

---

[139] *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998) (citing *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993)).

[140] *See Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

[141] Laszloffy also hasn't submitted evidence demonstrating (or argued that) he "actually suffered extreme or severe emotional distress," another required IIED element.  *Miller*, 970 P.2d at 577 (citing *Posadas*, 851 P.2d at 444).

IT IS FURTHER ORDERED that Laszloffy's motion for a six-month continuance **[ECF No. 117] is DENIED as moot.**

**The Clerk of Court is directed to ENTER JUDGMENT in favor of the defendants and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
June 5, 2024